IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

UNITED STATES OF AMERICA                              PLAINTIFF/RESPONDENT

V.                          Case No. 4:97-cr-40013-HFB-MEF

STEVEN W. WOOLDRIDGE                                  DEFENDANT/PETITIONER

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before the Court is the Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or

Correct Sentence by a Person in Federal Custody filed May 18, 2015. (Doc. 95) The United States

filed its Response on July 7, 2015. (Doc. 98) Petitioner filed his Reply to Government's Response

on August 18, 2015. (Doc. 99) The matter is ready for Report and Recommendation.

## I.  Background

In April 1997, Defendant/Petitioner, Steven W. Wooldridge ("Wooldridge"), was arrested

by state law enforcement officers as being a suspect in the kidnapping and death of Hollie Calhoun

Miller. (Doc. 98-1, p. 2) After being read his *Miranda*[1] rights and signing a rights form, Wooldridge

spoke with an officer briefly, then he advised that he wanted his lawyer, and at that point the

conversation was discontinued. *Id*. Wooldridge later advised that he was willing to talk, and he was

again read his *Miranda* rights, and in the presence of three officers gave a full confession of

kidnapping Hollie Calhoun Miller from her home on April 11, 1997. *Id*., at p. 3.

On July 29, 1997, a Criminal Complaint was filed against Wooldridge alleging that on or

about April 11, 1997, in Texarkana, Arkansas, in the Western District of Arkansas, Wooldridge did

willfully and unlawfully kidnap, abduct, and carry away Hollie Calhoun Miller, and that Wooldridge

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602 (1966).

willfully transported Hollie Calhoun Miller in interstate commerce from Texarkana, Arkansas to rural Cass County, Texas, in violation of 18 U.S.C. § 1201. (Doc. 1) Wooldridge made his initial appearance before the Hon. Bobby E. Shepherd on August 1, 1997, where he waived the issue of detention and a preliminary examination was scheduled on August 11, 1997. (Doc. 3) Attorney Barry A. Bryant ("Bryant") was appointed to represent Wooldridge. (Docs. 3, 5) A preliminary examination was then held on August 11, 1997, at which time the Court found probable cause existed to hold Wooldridge to answer the charge brought against him. (Doc. 8)

On September 24, 1997, Wooldridge was named in a one-count Indictment, filed in the United States District Court for the Western District of Arkansas, Texarkana Division, charging that on or about April 11, 1997, in the Western District of Arkansas, Wooldridge did willfully and unlawfully kidnap, abduct, and carry away Hollie Calhoun Miller, and that Wooldridge willfully transported Hollie Calhoun Miller in interstate commerce from Texarkana, Arkansas to rural Cass County, Texas, in violation of 18 U.S.C. § 1201. (Doc. 9) Wooldridge appeared for arraignment with his appointed counsel, Bryant, on September 26, 1997, and he entered a not guilty plea to the charge brought against him in the Indictment. (Doc. 10) Attorney, Craig Henry, was appointed as co-counsel to represent him. (Doc. 10)

On September 29, 1997, Wooldridge filed a Motion for Discovery. (Doc. 15) The government responded to Wooldridge's discovery request on October 1, 1997, and requested reciprocal discovery from Wooldridge. (Docs. 19, 20, 21)

On November 5, 1997, Wooldridge was named in a single count Superseding Indictment, filed in the United States District Court for the Western District of Arkansas, Texarkana Division, charging that on or about April 11, 1997, in the Western District of Arkansas, Wooldridge did

willfully and unlawfully kidnap, abduct, and carry away Hollie Calhoun Miller, and that Wooldridge willfully transported Hollie Calhoun Miller in interstate commerce from Texarkana, Arkansas to rural Cass County, Texas, and caused the death of Hollie Calhoun Miller, in violation of 18 U.S.C. § 1201. (Doc. 34) Wooldridge appeared for arraignment with his appointed counsel, Bryant, on December 1, 1997, and he entered a not guilty plea to the charge brought against him in the Superseding Indictment. (Doc. 39)

On January 6, 1998, the Government filed its Notice of Intent to Seek the Death Penalty, alleging numerous statutory, non-statutory, and other aggravating factors. (Doc. 46)

On June 25, 1998, Wooldridge appeared with counsel before the Hon. Harry F. Barnes, for a change of plea hearing. (Doc. 88) A written Plea Agreement was presented to the Court, and Wooldridge plead guilty to the single count of the Superseding Indictment charging him with kidnapping resulting in death, in violation of 18 U.S.C. § 1201. (Doc. 89, ¶ 1) Pursuant to the Plea Agreement, the Government moved to withdraw its Notice of Intent to Seek the Death Penalty, and the Court granted that motion. *Id*. The written Plea Agreement provided that in exchange for Wooldridge's acceptance of a life sentence without the possibility of release, and the waiver of rights to appeal the circumstances of his plea or the sentence imposed, the Government would withdraw its Notice of Intent to Seek the Death Penalty. (Doc. 89, ¶ 8) The written Plea Agreement expressly provided that the waiver of appeal rights included, but was not limited to, direct appeal pursuant to 28 U.S.C. § 1291 (Final Decisions of District Courts), collateral attack under 28 U.S.C. § 2255 (Federal Custody; Remedies on Motion Attacking Sentence), and "any habeas corpus proceeding." (Doc. 89, ¶ 8) The Court, pursuant to the terms of the written Plea Agreement, dispensed with a pre-sentence investigation and proceeded to sentence Wooldridge to life imprisonment without the

possibility of release. (Docs. 88, 89) Judgment was entered by the Court on July 1, 1998. (Doc. 91) Wooldridge did not pursue a direct appeal from the Judgment.

On May 18, 2015, Wooldridge filed his *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (the "Motion"). (Doc. 95) The Motion raises two grounds for relief, which are summarized as follows:

(1) That Wooldridge was deprived of due process of law when his Indictment and Conviction were premised on coerced and involuntary confession to the crime (Doc. 95, pp. 4-8[2]); and,

(2) The Court never acquired jurisdiction to prosecute Wooldridge since he was unlawfully seized and incarcerated without prior judicial authorization (Doc. 95, pp. 9-10).

Regarding timeliness of the Motion, Wooldridge alleges that he is actually innocent of the offense. (Doc. 95, p. 13)

The Government filed its Response to the Motion on July 7, 2015. (Doc. 98) Wooldridge filed his Reply to Government's Response on August 18, 2015. (Doc. 99)

## II.  Discussion

"A prisoner in custody under sentence . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). "If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not

---

[2] Document page number references are made to the Clerk's CM/ECF pagination, not the internal pagination in any particular document.

authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). A thorough review of Wooldridge's Motion and the files and records of this case conclusively shows that Wooldridge is not entitled to relief, and the undersigned recommends the denial and dismissal of his Motion with prejudice without an evidentiary hearing.

### A.  Waiver of Appeal and Post-Conviction Relief Rights

The written Plea Agreement accepted and approved by the Court during the change of plea hearing held on June 25, 1998 includes the following provision:

> "8.  The United States agrees that in exchange for the defendant's acceptance of a sentence of life imprisonment without the possibility of release, and the waiver of rights to appeal the circumstances of his plea or the sentence imposed, it will withdraw its notice of intent to seek the death penalty and concurs with a sentence of this defendant of life imprisonment without the possibility of release. This waiver of appeal, by the defendant, includes all rights set forth in Title 28, United States Code, Section 1291 (Final Decisions of District Courts), Title 18, United States Code, Section 3742 (Review of a Sentence), *Title 28, United States Code, Section 2255 (Federal Custody; Remedies on Motion Attacking Sentence), and any habeas corpus proceeding*." (Doc. 89, ¶ 8) (Emphasis added.)

The written Plea Agreement also sets forth certain representations by Wooldridge and his counsel, including that counsel had read and given a copy of the plea agreement to Wooldridge; that counsel had explained the ramifications of the plea agreement to Wooldridge; that counsel believes that Wooldridge understands the plea agreement, and what rights are being lost by pleading guilty; and that Wooldridge acknowledged that "he is completely satisfied with representation by his

attorneys," and he agrees "that they have aggressively and fully pursued his defense in this matter." (Doc. 89, ¶¶ 14, 15) Wooldridge and his counsel further acknowledged that Wooldridge's desire to change his plea to guilty was not the result of any threats or coercion directed at them or anyone connected with them. (Doc. 89, ¶ 17)

It is well settled in the Eighth Circuit that a knowing and voluntary waiver of direct appeal rights is generally enforceable. *See United States v. Goings*, 200 F.3d 539, 543 (8th Cir. 2000). A defendant's plea agreement promise to "waive his right to appeal, or challenge via post-conviction writs of habeas corpus or coram nobis, the district court's entry of judgment and imposition of sentence" has also been enforced. *See United States v. His Law*, 85 F.3d 379 (8th Cir. 1996). Seeing no reason to distinguish the enforceability of a waiver of direct appeal rights from a waiver of collateral attack rights in the plea agreement context, the Eighth Circuit has also ruled that a defendant may waive his § 2255 rights as part of a plea agreement. *See DeRoo v. United States*, 223 F.3d 919, 923 (8th Cir. 2000). The Court in *DeRoo* stated, however, that "such waivers are not absolute," and "defendants cannot waive their right to appeal an illegal sentence or a sentence imposed in violation of the terms of an agreement." *Id*. Additionally, the decision to be bound by the provisions of the plea agreement, including the waiver provisions, must be knowing and voluntary. *Id*. The Court there found that "[a] defendant's plea agreement waiver of the right to seek section 2255 post-conviction relief does not waive defendant's right to argue, pursuant to that section, that the decision to enter into the plea was not knowing and voluntary because it was the result of ineffectiveness of counsel." *Id*., at 924.

Even assuming that a waiver has been entered into knowingly and voluntarily, the Eighth Circuit has also held that it will still refuse to enforce an otherwise valid waiver if to do so would

result in a "miscarriage of justice." *See United States v. Andis*, 333 F.3d 886, 891 (8th Cir. 2003). Some of the components of that exception include the appeal of an illegal sentence, a sentence in violation of the terms of an agreement, or a claim asserting ineffective assistance of counsel. *Id.*, citing *DeRoo*, 223 F.3d at 923-24, and *United States v. Michelsen*, 141 F.3d 867, 872 n. 3 (8th Cir. 1998). The Court also noted that other circuits have adopted the "miscarriage of justice" exception and included within it, *inter alia*, sentences based on constitutionally impermissible factors (e.g., race) and claims asserting ineffective assistance of counsel claims. *Id.* (Internal citations omitted.) While listing some of the circumstances that might constitute a "miscarriage of justice," the Court in *Andis* recognized "that these waivers are contractual agreements between a defendant and the Government and should not be easily voided by the courts," and as such, "we caution that this exception is a narrow one and will not be allowed to swallow the general rule that waivers of appellate rights are valid." *Id.*

Wooldridge is clearly aware of the waiver, as he acknowledged in his Motion that "[i]t was part of conditions of plea agreement that no appeal would be allowed," and that "[i]t was emphasized, by the court, that no habeas corpus petition could be filed without causing the plea agreement to be voided." (Doc. 95, pp. 4, 9) Having reviewed the Eighth Circuit's approach to the waiver of appellate and post-conviction rights, we now examine Wooldridge's argument that in spite of his waiver we should consider the merits of his claims in this § 2255 proceeding.

We note that neither of Wooldridge's grounds for relief relate to ineffective assistance of counsel claims. Wooldridge claims, in essence, that he was arrested and taken into custody without a warrant or probable cause; that he was denied the right to counsel during interrogation; that he was coerced into making a confession; and, that his confession was then used to indict him. He does not,

for example, assert that his trial counsel was ineffective for failing to seek dismissal of the indictment, nor for failing to move to suppress his allegedly coerced confession. Wooldridge also does not allege that his guilty plea was unknowingly and involuntarily made. Further, he does not allege that the sentence imposed was in violation of the terms of the Plea Agreement. In the complete absence of any such allegations, Wooldridge's waiver of his appellate and post-conviction rights is enforceable. *See United States v. Rutan*, 956 F.2d 827, 829 (8th Cir. 1992) (a waiver of a right to appeal is enforceable if the waiver is knowingly and voluntarily made, and the sentence imposed is in accordance with the negotiated agreement).

The issue of whether Wooldridge falls within the narrow "miscarriage of justice" exception to the general rule of enforceability of appellate and post-conviction rights waivers is then reduced to whether the sentence imposed is otherwise illegal. "A sentence is illegal when it is not authorized by the judgment of conviction or when it is greater or less than the permissible statutory penalty for the crime." *Andis*, 333 F.3d at 892, quoting *United States v. Greatwalker*, 285 F.3d 727, 729 (8th Cir. 2002). In further explaining what constitutes an illegal sentence, the Court in *United States v. Peltier*, 312 F.3d 938, 942 (8th Cir. 2002) said:

> "[a] sentence is illegal when it is not authorized by law; for example, when the sentence is 'in excess of a statutory provision or otherwise contrary to the applicable statute.' A sentence is not illegal if the 'punishment meted out was not in excess of that prescribed by the relevant statutes ... or the terms of the sentence itself are not legally or constitutionally invalid in any other respect.'"

With this definition, it is clear that Wooldridge's sentence to life imprisonment without the possibility of release is not illegal as it falls within the statutory range for the offense. *See* 18 U.S.C. § 1201(a) ("... shall be punished by imprisonment for any term of years or for life and, if the death

of any person results, shall be punished by death or life imprisonment."). The Eighth Circuit stated in *Andis*, "[w]e wish to make clear that the illegal sentence exception to the general enforceability of an appeal waiver is an extremely narrow exception[,]" and that "[a]ny sentence imposed within the statutory range is not subject to appeal." 333 F.3d at 892.

Wooldridge makes no claim of ineffective assistance of counsel; he does not allege that his guilty plea was unknowingly and involuntarily made; he does not allege that the sentence imposed was in violation of the terms of the Plea Agreement; and, as just discussed, the sentence imposed is not illegal as it falls within the statutory range of punishment for the offense. Accordingly, the undersigned concludes that the appeal and post-conviction rights waiver contained in Wooldridge's written Plea Agreement is valid and enforceable, and that Wooldridge's § 2255 Motion is therefore subject to summary dismissal.

## B.  Timeliness

A one year period of limitation applies to motions under 28 U.S.C. § 2255. This period runs from the latest of: (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or, (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255(f).

The operative date in this case is "the date on which the judgment of conviction becomes

final," as Wooldridge raises no issue regarding any impediment created by Government action to making his Motion, he asserts no right newly recognized by the Supreme Court made retroactive to cases on collateral review, and he makes no claim based on newly discovered evidence. An un-appealed criminal judgment becomes final when the time for filing a direct appeal expires. *Anjulo-Lopez v. United States*, 541 F.3d 814, 816 n. 2 (8th Cir. 2008). The Judgment in this case was entered on July 1, 1998. Had Wooldridge wished to file an appeal, he was required to do so within 10 days. *See* Fed. R. App. P. 4(b)(1)(A)(i)[3]. Wooldridge did not file an appeal, and his judgment of conviction thus became final on July 11, 1998. *See Murray v. United States*, 313 Fed. App'x 924 (8th Cir. 2009). From that date, Wooldridge had one year, or until July 11, 1999, to timely file his § 2255 habeas petition. Wooldridge's § 2255 Motion was filed on May 18, 2015, and as the Government points out, this was 15 years, 10 months and seven days after the limitations period expired. Because the Motion has been filed beyond the one year period of limitation, the Government argues that the Court lacks jurisdiction to consider the merits of Wooldridge's claims and that the Motion should be summarily dismissed.

Timeliness is crucial to the consideration of a motion made under § 2255. *See, e.g., Alsup v. United States*, No. 09-3266-CV-S-RED, 2010 WL 376990, at pp. 2-3, (W.D. Mo. Jan. 26, 2010) (unpublished), in which the Government's motion to dismiss petitioner's § 2255 motion was granted where the motion was filed *one day* out of time. "Foreclosing litigants from bringing their claim because they missed the filing deadline by one day may seem harsh, but courts have to draw lines somewhere, statutes of limitation protect important social interests (internal citation omitted), and limitation periods work both ways - you can be sure [Wooldridge] would not be pooh-poohing the

---

[3] Amended from 10 days to 14 days in 2005.

prosecution's tardiness if he had been indicted one day after the statute of limitations expired for his crimes." *See United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000). Here, of course, we are not dealing with Wooldridge missing the limitations deadline by one day, but by nearly sixteen years. Consequently, unless either statutory or equitable tolling applies, Wooldridge's § 2255 Motion was not timely filed and should be summarily dismissed.

### 1. Statutory Tolling

The one year period within which to file a § 2255 motion may, in an appropriate case, begin on the date on which an impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; from the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or, from the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255(f)(2-4). Wooldridge's § 2255 Motion sets forth nothing in support of any of these grounds to extend the one year limitations period. There is, therefore, no factual basis to find that any of the § 2255(f)(2-4) statutory provisions apply to this case to extend the one year limitations period beyond the date when the judgment of conviction became final. Unless equitable tolling applies, Wooldridge's § 2255 Motion was not timely filed and should be dismissed.

### 2. Equitable Tolling

The Eighth Circuit has held that the doctrine of equitable tolling is available to a § 2255 movant, but only "under limited conditions, for example, where extraordinary circumstances beyond a prisoner's control prevent the timely filing." *See Gassler v. Bruton*, 255 F.3d 492, 495 (8th Cir.

2001); *United States v. Martin*, 408 F.3d 1089, 1092 (8th Cir. 2005). The use of equitable procedures should be infrequent, *see Flanders v. Graves*, 299 F.3d 974, 976 (8th Cir. 2002), and will not be applied if the habeas movant has not diligently pursued his rights, *see Finch v. Miller*, 491 F.3d 424, 427 (8th Cir. 2007). "Equitable tolling is an exceedingly narrow window of relief." *Maghee v. Ault*, 410 F.3d 473, 476 (8th Cir. 2005).

Wooldridge has not alleged that any extenuating circumstances beyond his control prevented a timely filing, nor has he even relied on the doctrine of equitable tolling. He does not claim that some Government action made it impossible or difficult for him to uncover the facts that he now asserts in support of his claims. He does not allege that the Government somehow lulled him into inaction. He does not refer to any extraordinary circumstances, attributable to the Government or to any other external cause, that prevented him, in the exercise of reasonable diligence, from discovering the facts upon which his claims are based soon enough to enable him to bring a timely habeas petition.

In sum, Wooldridge fails to allege any extraordinary circumstances beyond his control that prevented him from timely filing his § 2255 Motion. Nor has Wooldridge shown that he exercised due diligence in the pursuit of his rights. After nearly sixteen years, he now asserts claims that could have, and should have, been raised prior to his plea of guilty. In doing so, he alleges no new facts that would explain a delay in bringing his claims. He has failed to allege and establish any factual basis whatsoever to fit within the "exceedingly narrow window of relief" that equitable tolling provides, and his § 2255 Motion should be dismissed as untimely.

### 3. Actual Innocence Exception

Wooldridge's only position regarding timeliness of his § 2255 Motion is his assertion that

he is actually innocent of the offense.

In *McQuiggin v. Perkins*, ___ U.S. ___, 133 S.Ct. 1924 (2013), the United States Supreme Court held that actual innocence, if proved, serves as a gateway through which a habeas petitioner may pass whether the impediment is a procedural bar or the expiration of the statute of limitations. The Court there commented that the standard is demanding and seldom met, and it cautioned that "tenable actual-innocence gateway pleas are rare;" and, citing and quoting *Schlup v. Delo*, 513 U.S. 298, 329, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995), stated "[a] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." 133 S.Ct., at 1298. The Court added that, "'the timing of the [petition]' is a factor bearing on the 'reliability of th[e] evidence' purporting to show actual innocence." *Id*., quoting *Schlup*, 513 U.S., at 332. Thus, when faced with an actual-innocence gateway claim, a court should consider unjustifiable delay on a habeas petitioner's part not as an absolute barrier to relief, but as a factor weighing in the determination of whether actual innocence has been reliably shown. *Id*.

The petitioner in *McQuiggin* filed his habeas corpus petition more than 11 years after his conviction became final. To overcome the one year limitations period, he asserted newly discovered evidence of actual innocence, namely three affidavits pointing to the guilt of another person. The most recent of these affidavits had been obtained nearly six years prior to the filing of the habeas corpus petition. Addressing the State's fears that a prisoner might "lie in wait and use stale evidence to collaterally attack his conviction ...," the Court advised that "[t]he timing of such a petition, however, should seriously undermine the credibility of the actual-innocence claim," and that "frivolous petitions should occasion instant dismissal." *Id*., 133 S.Ct., at 1936.

-13-

In analyzing the petitioner's actual-innocence gateway claim in *McQuiggin*, the Court observed that the District Court proceeded properly in first determining that petitioner's claim was filed well beyond the limitations period, and that equitable tolling was unavailable because the petitioner could demonstrate neither exceptional circumstances nor diligence. *Id*. The circumstances are similar in the present case, as Wooldridge has filed his § 2255 Motion well beyond the one year limitations period and has demonstrated neither exceptional circumstances nor diligence. The District Court in *McQuiggin* next found that the petitioner's newly discovered evidence was substantially available to the petitioner at the time of trial; and, that even if considered to be "new" evidence, it was inadequate to show that, had it been presented at trial, no reasonable juror would have convicted the petitioner. *Id*. The Supreme Court ruled that on remand "the District Court's appraisal of [petitioner's] petition as insufficient to meet *Schlup's* actual-innocence standard should be dispositive," and the Court stressed again that "the *Schlup* standard is demanding." *Id*.

Here, after waiting nearly 17 years after his guilty plea and judgment of conviction, Wooldridge now asserts in conclusory fashion that he is actually innocent. Unlike the petitioner in *McQuiggin* who at least offered some, albeit stale and insufficient, new evidence of his actual innocence, Wooldridge has provided nothing to support his actual-innocence claim. He argues that he was arrested without a warrant or probable cause, and that he was coerced into making an involuntary confession to police. He contends that without his coerced and involuntary confession, there would have been no evidence to connect him to the kidnapping and death of the victim. Wooldridge does not, however, affirmatively state that he did not commit the crime to which he plead guilty, nor does he offer any new evidence to support his claim of actual innocence.

Wooldridge's failure to present any newly discovered evidence in support of his actual

innocence claim is determinative. The actual-innocence exception, as the Supreme Court underscored in *McQuiggin*, applies to "a severely confined category: cases in which *new evidence* shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" 133 S.Ct., at 1933 (emphasis added). Further, "[t]o be credible, such a claim requires petitioner to support his allegations of constitutional error with *new reliable evidence* - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial." *Schlup*, 513 U.S., at 324 (Emphasis added). Wooldridge offers no new reliable evidence of his innocence whatsoever, only his bare assertion of actual innocence. The absence of any new reliable evidence of innocence precludes this Court from reaching the merits of Wooldridge's time and procedurally barred constitutional claims.

The Government also contends that Wooldridge's argument (that his conviction was based on a coerced and involuntary confession) presents a question of legal innocence, not actual innocence. The undersigned agrees. In *Nolan v. Armontrout*, 973 F.2d 615, 617 (8th Cir. 1992), also a case concerning a kidnapping and death of the victim, the Court clearly explained that in the context of the miscarriage of justice exception to the cause-and-prejudice standard to overcome procedural default, the narrow exception "is concerned with actual as compared to legal innocence." The Court there held that petitioner, who claimed that his involuntary confessions were the State's only evidence, raised a claim of legal innocence and not actual innocence. *Id*. The same argument, that his coerced and involuntary confession was the only evidence against him, is presented by Wooldridge in this case. Accordingly, Wooldridge's claim is really a claim of legal innocence, not actual innocence, and such a claim is insufficient to satisfy the actual-innocence exception to open the gateway to reach the merits of his otherwise time and procedurally barred claims.

### C.  Procedural Default

The United States Supreme Court has "long and consistently affirmed that a collateral challenge may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165, 102 S.Ct. 1584, 1593, 71 L.Ed.2d 816 (1982) (internal citations omitted). Relief under § 2255 "is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996). The circumstances under which a guilty plea may be attacked on collateral review are strictly limited, and "[i]t is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508, 104 S.Ct. 2543, 2546-47, 81 L.Ed.2d 437 (1984). Even the voluntariness and intelligence of a guilty plea can be attacked on collateral review *only* if first challenged on direct review, as "[h]abeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'" *Bousley v. United States*, 523 U.S. 614, 621, 118 S.Ct. 1604, 1610, 140 L.Ed.2d 828 (1998) (internal quotation marks and citation omitted). "[T]he concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas." *Id*.

In this case, Wooldridge, whose written Plea Agreement included a waiver of his appeal and post-conviction rights, did not pursue any relief on direct appeal. As discussed above, and despite his appeal rights waiver, Wooldridge could have challenged that his guilty plea was knowingly and voluntarily made on appeal. *See DeRoo*, 223 F.3d, at 924. By failing to do so, Wooldridge procedurally defaulted the constitutional claims he now raises.

This procedural default may be excused only if Wooldridge "can show both (1) a cause that

excuses the default, and (2) actual prejudice from the errors that are asserted." *Matthews v. United States*, 114 F.3d 112, 113 (8th Cir. 1997) (quoting *Bousley v. Brooks*, 97 F.3d 284, 287 (8th Cir. 1996)); *Apfel*, 97 F.3d at 1076; and, *Frady*, 456 U.S. at 167-68. "For cause to exist, the external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S.Ct. 1454, 1472, 113 L.Ed.2d 517 (1991).

Wooldridge makes no such showing here. Wooldridge fails to demonstrate how the factual or legal basis for his constitutional claims was not reasonably available to him in time to pursue relief in the trial court or on direct appeal. Wooldridge alleges that he was deprived of due process of law when his indictment and conviction "were premised on coerced and involuntary confession to the crime," and that the Court never acquired jurisdiction to prosecute him since he was "unlawfully seized and incarcerated without prior judicial approval." (Doc. 95, pp. 4-10) Wooldridge's allegations show that he was aware of the alleged unconstitutional actions prior to his guilty plea, and even prior to his indictment. He was, therefore, aware of the factual basis for his claims in time to pursue relief in the trial court and on direct appeal. He simply failed to do so.

Further, there is no assertion by Wooldridge that some interference by government officials, or some external impediment, prevented him from raising his constitutional claims in the trial court or on direct appeal.

Since Wooldridge has not shown adequate cause to overcome the procedural bar in his case, the Court need not consider the issue of actual prejudice. *Ashker v. Class*, 152 F.3d 863, 871 (8th Cir. 1998) (citing *Engle v. Isaac*, 456 U.S. 107, 134 n. 43, 102 S.Ct. 1558, 1575, 71 L.Ed.2d 783 (1982)). Even so, and despite Wooldridge's assertion of a miscarriage of justice through actual

innocence, he has presented absolutely no new, reliable evidence to support his actual-innocence

claim. Nor has he challenged the voluntary and intelligent nature of his guilty plea. "Without any

new evidence of innocence, even the existence of a concededly meritorious constitutional violation

is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach

the merits of a barred claim." *Schlup*, 513 U.S., at 316.

Wooldridge has failed to demonstrate "cause and prejudice" or a "miscarriage of justice" to

overcome the procedural default of the constitutional claims he now asserts, and his § 2255 Motion

should be dismissed.

### D.  Wooldridge's Voluntary Guilty Plea Forecloses His Claims

Wooldridge plead guilty to the offense of conviction. When a guilty plea is entered by the

movant, the focus of a collateral attack is limited to the nature of counsel's advice and the

voluntariness of the guilty plea. *Bass v. United States*, 739 F.2d 405, 406 (8th Cir. 1984), *citing*

*Tollett v. Henderson*, 411 U.S. 258, 266, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973). As the Court

in *Tollett* eloquently observed:

> ". . . a guilty plea represents a break in the chain of events which has
> preceded it in the criminal process. When a criminal defendant has
> solemnly admitted in open court that he is in fact guilty of the offense
> with which he is charged, *he may not thereafter raise independent
> claims relating to the deprivation of constitutional rights that
> occurred prior to the entry of the guilty plea. He may only attack the
> voluntary and intelligent character of the guilty plea* by showing that
> the advise he received from counsel was not within the standards set
> forth in *McMann*[4]. *Id*. at 267. (Emphasis added.)

The rationale and ruling of *Tollett*, while a decision concerning a state prisoner's habeas

---

[4] *McMann v. Richardson*, 397 U.S. 759, 771 (1970) (If a prisoner pleads guilty on the
advice of counsel, he must demonstrate that the advice was not "within the range of competence
demanded of attorneys in criminal cases.").

claims, has been adopted by the Eighth Circuit for application to motions made by federal prisoners under 28 U.S.C. § 2255. *See Bass*, 739 F.2d at 406.

The standard for determining the validity of a guilty plea remains whether it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970), *citing Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969), *Machibroda v. United States*, 368 U.S. 487, 493, 82 S.Ct. 510, 513, 7 L.Ed.2d 473 (1962), and *Kercheval v. United States*, 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927). "While a guilty plea taken in open court is not invulnerable to collateral attack in a post conviction proceeding, the defendant's representations during the plea-taking carry a strong presumption of verity and pose a 'formidable barrier in any subsequent collateral proceedings.'" *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997) (quoting *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985)). A defendant has a heavy burden to overcome those admissions and show that his guilty plea was involuntary. *See Blackledge v. Allison*, 431 U.S. 63, 72-74, 97 S.Ct. 1621, 1628-29, 52 L.Ed.2d 136 (1977).

In the present case, Wooldridge was represented by experienced counsel, Barry A. Bryant and Craig L. Henry, throughout the criminal proceedings leading to and including the change of plea hearing. Prior to the change of plea hearing, defense counsel had represented Wooldridge at the initial appearance (Doc. 3); at a preliminary examination (Doc. 8); at the arraignments (Docs. 10, 39); they prepared and filed a Motion for a mental examination (Doc. 13); prepared and filed a Motion for Discovery and Inspection (Doc. 15); responded and objected to the Government's Motion to Compel Wooldridge to submit to a mental examination (Docs. 22, 23, 67); responded to the Government's Motion to Compel Wooldridge to declare whether he intended to use any insanity,

mental deficiency, or drug induced diminished capacity defense in either trial or at sentencing (Doc. 24); prepared and filed Notice pursuant to Rule 12.2 of FRCrP of intent to introduce expert testimony regarding mental disease or defect or any other mental condition (Doc. 26) and an Amendment (Doc. 66); prepared and filed a Motion for imposition of minimal procedural safeguards for protection of Wooldridge's Fifth and Sixth Amendment rights in connection with the Government's mental examination of Wooldridge (Docs. 36, 37); they appeared at a pre-trial hearing (Doc. 59); responded and objected to the Government's Motion to obtain the depositions of certain witnesses (Doc. 70); prepared and filed a Motion for the disclosure of jailhouse statements (Doc. 78); prepared and filed a Motion to preclude imposition of the death penalty (Docs. 79, 80) and a Motion to strike the Government's notice of intent to seek the death penalty (Docs. 84, 85); prepared and filed a Motion to suppress the Government's use of expert psychological testimony (Docs. 81, 82); they had prepared for trial; and, they had negotiated a written Plea Agreement with the Assistant United States Attorney prosecuting the case.

Defense counsel carefully reviewed the written Plea Agreement with Wooldridge before obtaining Wooldridge's signature on it. (Doc. 89, ¶ 14) The Plea Agreement informed Wooldridge of the count of conviction, being the single count of the Superseding Indictment charging Wooldridge with kidnapping resulting in death of the victim in violation of 18 U.S.C. § 1201. (Doc. 89, ¶ 1) Wooldridge acknowledged that he was completely satisfied with the representation of his attorneys, and he agreed that they had aggressively and fully pursued his defense in the case. (Doc. 89, ¶ 15) Wooldridge also acknowledged that neither he, nor his counsel, nor anyone connected with them, had been subjected to any threats or coercion to induce him to change his plea to guilty. (Doc. 89, ¶ 17) The Plea Agreement advised Wooldridge of his constitutional and statutory rights,

including the right to persist in his plea of not guilty. (Doc. 89, ¶ 2)

During the change of plea hearing on June 25, 1998, Judge Barnes commented that "[t]his is a very solemn occasion, a very important occasion for numerous people ...", and he cautioned that, "[s]o, Mr. Wooldridge, if at any time you don't understand anything, you have two very capable, able attorneys there, please contact them and we'll take a recess and have that explained to you because I want this to go right, I want it to be right, and I want you to understand everything that you're doing today." (Doc. 100, pp.3-4) The Court advised Wooldridge of his constitutional and statutory rights, which Wooldridge acknowledged, and Wooldridge also acknowledged understanding that a guilty plea waives those rights. (Doc. 100, pp. 8-10) Wooldridge was sworn on oath, and inquiry was made in detail regarding the written Plea Agreement that Wooldridge had entered into with the Government. (Doc. 100, pp. 10-15) Wooldridge acknowledged his signature on the Plea Agreement, and he stated that he understood the Plea Agreement in its entirety. (Doc. 100, p. 16) He understood that pursuant to the Plea Agreement he waived his right to appeal and post-conviction remedies, including habeas corpus. (Doc. 100, pp. 16-17) He advised that nobody had made any threats or forced him to change his plea; that no promises were made other than those contained in the Plea Agreement; and, that nobody put any pressure on him to which he could not resist. (Doc. 100, p. 17) Wooldridge informed the Court that he was free of drugs, and that his mental faculties were not impaired. (Doc. 100, p. 18) He stated that he was satisfied with his representation, and that his lawyers had effectively represented him. (Doc. 100, pp. 18-19) The Government's attorney informed Wooldridge and the Court of the factual basis to support the charge (Doc. 100, pp. 19-23). Wooldridge then entered his plea of guilty to the Superseding Indictment; and, when asked by the Court, "[n]ow, in your own words did you do essentially what the United States Attorney said?",

Wooldridge admitted, "[y]es, I did, Your Honor." (Doc. 100, pp. 23-24) The Court found Wooldridge fully competent and capable of entering an informed plea, that his guilty plea was a knowing and voluntary plea supported by an independent basis of fact relative to the essential elements of the offense, and Wooldridge's guilty plea was accepted by the Court. (Doc. 100, p. 24) Pursuant to the terms of the written Plea Agreement, a pre-sentence investigation was dispensed with, and the Court proceeded to impose a sentence of life imprisonment without the possibility of release on Wooldridge. The Government's motion to withdraw its notice to seek the death penalty was then made and granted. (Doc. 100, p. 30)

Wooldridge does not allege in his § 2255 Motion any claims of ineffective assistance of counsel that rendered his guilty plea involuntary, unintelligent, and invalid. Instead, Wooldridge asserts that he was arrested without probable cause or a warrant, that he was denied his right to confer with counsel while detained, and that he was coerced into making an involuntary confession to the crime from which this prosecution then arose. (Doc. 95, pp. 4-10) The Government responds by alleging that an affidavit for kidnapping had been issued for Wooldridge, and with the affidavit in hand, law enforcement apprehended Wooldridge at his place of employment. (Doc. 98, p. 11; Doc. 98-1, p. 2) Wooldridge consented to a search of his vehicle, and the search produced evidence consistent with that found at the kidnapping scene. *Id*. Wooldridge was then taken to the sheriff's department, read his *Miranda* rights, stated he understood them, signed a rights form, and briefly spoke with an officer. (Doc. 98, p. 12; Doc. 98-1, p. 2) Wooldridge then advised that he wanted his lawyer, at which time the questioning ceased. *Id*. Wooldridge later advised a law enforcement officer that he was willing to talk, and after Wooldridge reinitiated conversation, he was again read his *Miranda* rights, and in the presence of several law enforcement officers Wooldridge gave a full

confession of kidnapping Hollie Calhoun Miller. *Id.*

Wooldridge sets forth no facts to support a claim that his "will [was] overborne and his capacity for self-determination critically impaired" in connection with his confession. *See United States v. Kilgore*, 58 F.3d 350, 353 (8th Cir. 1995) (quoting *Sumpter v. Nix*, 863 F.2d 563, 565 (8th Cir. 1988)). Further, Wooldridge states no facts to show that his counsel's advice during plea negotiations "fell below an objective standard of reasonableness," and that there exists "a reasonable probability that, but for counsel's errors, he would not have [pled] guilty and would have insisted on going to trial." *Tinajero-Ortiz v. United States*, 635 F.3d 1100, 1103 (8th Cir. 2011).

Numerous pre-trial motions were made by defense counsel on Wooldridge's behalf, and Wooldridge could have challenged the validity of his allegedly coerced and involuntary confession through a motion to suppress. He made no such challenge to the voluntariness of his confession. Instead, he plead guilty. "A defendant's knowing and intelligent guilty plea forecloses 'independent claims relating to the deprivation of constitutional rights that occurred prior to the guilty plea.'" *United States v. Vaughn*, 13 F.3d 1186, 1187 (8th Cir. 1994) (quoting *Tollett*, 411 U.S., at 267). Recognizing that it carved certain exceptions from this general rule, *see, e.g., Blackledge v. Perry*, 417 U.S. 21, 30-31, 94 S.Ct. 2098, 2013-04, 40 L.Ed.2d 628 (1974) (claim of prosecutorial vindictiveness) and *Menna v. New York*, 423 U.S. 61, 62, 96 S.Ct. 241, 242, 46 L.Ed.2d 195 (1975) (double jeopardy claim), the Supreme Court in *United States v. Broce*, 488 U.S. 563, 569, 109 S.Ct. 757, 762, 765, 102 L.Ed.2d 927 (1989) explained (in the context of a breach of plea agreement claim) that unless "on the face of the record the court had no power to enter the conviction or impose the sentence," a guilty plea does foreclose any independent constitutional claim that occurred prior to the guilty plea. Here, it is not apparent "on the face of the record" that the prosecution against

Wooldridge was based on an allegedly coerced and involuntary confession obtained in violation of his constitutional rights, and his subsequent guilty plea forecloses those independent constitutional claims.

As Wooldridge's § 2255 Motion does not challenge the voluntary and intelligent character of his guilty plea, it is deficient and subject to dismissal.

### E.  No Evidentiary Hearing Is Warranted

A movant is not entitled to an evidentiary hearing on a § 2255 motion if "the motion and the files and records of the case conclusively show that the [movant] is entitled to no relief." *Nguyen v. United States*, 114 F.3d 699, 703 (1997), quoting from *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985). Such are the circumstances in this case.

For the reasons and upon the authorities discussed above, the undersigned finds Wooldridge's allegations to be contradicted by the record, inherently incredible, or conclusions rather than statements of fact, and the undersigned does not believe an evidentiary hearing is necessary. The Court need not hold a hearing to determine, for example, the scope and enforceability of the waiver of appellate and post-conviction relief rights, as Wooldridge has not asserted any claim of ineffective assistance of counsel in connection with the Plea Agreement and waiver; whether the § 2255 Motion is untimely, because the record plainly shows that it is, and Wooldridge has failed to allege and demonstrate the basis for any statutory tolling, equitable tolling, or application of the actual-innocence exception; whether Wooldridge's asserted claims are procedurally defaulted, because the record shows that they are, and Wooldridge has failed to allege and demonstrate the basis for any cause and prejudice or miscarriage of justice exception; or, whether Wooldridge's guilty plea forecloses his constitutional claims arising before the guilty plea, since Wooldridge has neither

-24-

alleged nor shown any facts to support a conclusion that his guilty plea was unknowing and involuntary. Accordingly, the undersigned recommends the summary dismissal of Wooldridge's § 2255 Motion without an evidentiary hearing.

### III.  Conclusion

For the reasons and upon the authorities discussed above, Wooldridge's claims are unsupported by the record in this case. I recommend that Wooldridge's Motion, filed under 28 U.S.C. § 2255, be **DISMISSED with PREJUDICE**.

**The parties have fourteen (14) days from receipt of this Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely written objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 28th day of September, 2015.

/s/ *Mark E. Ford*

HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE