IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

UNITED STATES OF AMERICA                                                                    PLAINTIFF

v.                                    Case No. 4:97-cr-40013-001

STEVEN WOOLRIDGE                                                                            DEFENDANT

**ORDER**

Before the Court is Defendant Steven Woolridge's Motion for Compassionate Release and Supplement. ECF Nos. 120, 139. The Government has responded. ECF No. 128. Defendant has filed a reply. ECF No. 131. The Court finds the matter ripe for consideration.

**I. BACKGROUND**

Defendant Steven Woolridge pleaded guilty to kidnapping resulting in the death of Jane Doe, in violation of 18 U.S.C. § 1201. During the plea hearing, Defendant admitted to the following facts. ECF No. 100. Defendant was looking to abduct and assault a female. In preparation for his crime, he rented a warehouse in Texarkana, Texas. On April 11, 1997, around mid-morning, Defendant saw Jane Doe[1] in front of her home in Texarkana, Arkansas. He watched her enter her home after she finished working in the flowerbeds of her front yard. Defendant parked his minivan near Jane Doe's home and walked to her back door. He carried with him a knife that was concealed in his coveralls and had a sawed-off shotgun in his minivan. He knocked on Jane Doe's back door, and when she answered, he asked to use her phone.

When Jane Doe turned to get her phone, Defendant forcibly entered her home and took control of her by placing his knife to her throat. Using threats of physical violence, Defendant wrapped and bound Jane Doe inside a blanket. He then searched Jane Doe's residence.

---

[1] In this Order, the Court will refer to the victim as Jane Doe.

After burglarizing Jane Doe's home, he restrained her with a rope and forced her to leave her home with him. Defendant placed Jane Doe in her car and drove her to the warehouse he had rented. Defendant placed her inside the warehouse and bound her with ropes and other restraints. Defendant then returned to Jane Doe's home, stole some property, and cleared her home of evidence of his crime.

Thereafter, Defendant returned to the warehouse. At approximately 6:00 p.m., in response to Jane Doe's pleas to spare her life and release her, Defendant assured her that he would take her into a rural area and release her. Defendant drove Jane Doe to a rural, wooded area in Cass County, Texas. Threatening her with his knife and shotgun, Defendant ordered Jane Doe to walk into the woods, caused her to kneel with a towel over her head, and instructed her to begin counting to one thousand. As she was counting, Defendant killed Jane Doe with the shotgun. He then stole her wedding band and other jewelry. The Post Sentence Investigation Report notes that as Defendant walked back to his minivan after murdering Jane Doe, he thought to himself, "That wasn't hard, I will forget about it in a few days." ECF No. 125, ¶ 19. Defendant admitted that his intent in kidnapping Jane Doe was to sexually assault and rob her. ECF No. 100.

The Government filed a notice of intent to seek the death penalty. ECF No. 46. Defendant decided to plead guilty. The plea agreement provided that in exchange for Defendant's guilty plea and his agreement to be sentenced to life in prison without the possibility of release, and in exchange for his agreement to waive appellate rights, the Government agreed to withdraw its notice to seek the death penalty. On June 25, 1998, Defendant was sentenced to life in prison without the possibility of release.

Defendant has filed the present Motion for Compassionate Release and Supplement, in which he asks the Court to reduce his life sentence to time served. In the alternative, he asks the

Court to reduce his sentence to time served and order him to complete a period of home confinement as a condition of supervised release. He is seeking a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), citing his advanced age and medical conditions. ECF No. 139, p. 3. He argues that these circumstances present "extraordinary and compelling" reasons for a sentence reduction. The Government has responded in opposition. ECF No. 128.

## II. DISCUSSION

Relief is available under the First Step Act of 2018 ("FSA") if the Court finds: (1) that the requested sentence reduction is warranted due to "extraordinary and compelling reasons;" (2) that the sentencing factors set forth in 18 U.S.C. § 3553(a) support a reduction "to the extent that they are applicable;" and (3) that a reduction would be consistent with any applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A). Before an analysis of those factors can begin, the Court must determine if Defendant has exhausted all administrative remedies available. 18 U.S.C. § 3582(c)(1)(A).

### A. Exhaustion of Administrative Remedies

The FSA provides two avenues for a defendant to bring a compassionate release motion to a district court. The defendant may either file a motion once he "has fully exhausted all administrative rights to appeal a failure of the [Bureau of Prisons] to bring the motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." § 3582(c)(1)(A).

The Bureau of Prisons ("BOP") has outlined the administrative exhaustion process in its Program Statement No. 5050.50. In short, a request for compassionate release must first be submitted to the warden of the BOP facility in which the defendant is housed. 28 C.F.R. § 571.61(a). If the warden approves the request, it is sent to the BOP's general counsel for approval.

28 C.F.R. § 571.62(A)(1). If the general counsel approves the request, it is sent to the BOP's director for a final decision. 28 C.F.R. § 571.62(A)(2). If the director approves, he or she will ask the United States Attorney in the applicable judicial district to file a compassionate release motion on BOP's behalf. 28 C.F.R. § 571.62(A)(3).

If the warden does not respond to the request, the defendant's administrative remedies are deemed exhausted after thirty days. 18 U.S.C. § 3582(c)(1)(A)(i). If the warden denies the compassionate release request, the defendant must appeal the decision pursuant to the BOP's Administrative Remedy Program. 28 C.F.R. § 571.63(a). If the request is denied by the BOP's general counsel or director, that decision is considered a final administrative decision and the defendant's administrative remedies are exhausted at that time. 28 C.F.R. § 571.63(b)-(c). Failure to exhaust the administrative remedies available with the BOP forecloses the consideration of any motion for compassionate release on its merits. *See U.S. v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020).

Turning now to the present case, on March 19, 2020, Defendant filed a request for a reduction in his sentence with the warden. Approximately two months later, he sent an email to the warden following up on his request. On June 25, 2020, Defendant made another request for compassionate release, to which the warden had not responded as of the date Defendant filed his compassionate release motion. Because more than thirty (30) days elapsed since Defendant made his request with no response from the warden, Defendant has exhausted his administrative remedies and is eligible to file his request for relief directly with this Court. Thus, his request for release may be evaluated on the merits.

### B. Extraordinary and Compelling Reasons

Pursuant to the FSA, the Court can grant Defendant's request for a sentence reduction "if

it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the [United States] Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A)(i).  Congress has not defined what constitutes "extraordinary and compelling" reasons, although it did note that "[r]ehabilitation of the defendant alone" is insufficient.  28 U.S.C. § 994(t).  Instead, the Sentencing Commission was directed to promulgate "the criteria to be applied and a list of specific" extraordinary and compelling examples.  *Id.*  Thus, the Court looks to the Sentencing Commission's policy statement in the United States Sentencing Guidelines ("USSG") as a starting point in determining what constitutes "extraordinary and compelling reasons" under § 3582(c)(1)(A)(i).  *See id.*

The most recent policy statement contemplates a reduction in the term of imprisonment if: (1) "extraordinary and compelling reasons warrant the reduction;" (2) a new sentence would be consistent with the factors set forth in 18 U.S.C. § 3553(a); (3) a new sentence would be consistent with any applicable policy statements, and (4) the defendant is not a danger to the safety of others, as provided in 18 U.S.C. § 3142(g).  USSG § 1B1.13(a).  As amended in 2023, the policy statement describes the following categories of reasons, or a combination thereof, that should be considered extraordinary and compelling:  "Medical Circumstances of the Defendant," "Age of the Defendant," "Family Circumstances of the Defendant," "Victim of Abuse," "Other Reasons," and "Unusually Long Sentence."  USSG § 1B1.13(b).  Relevant to the instant case are the following subsections:

> (b)(1)(B) The defendant is—
>
>> (i) suffering from a serious physical or medical condition,
>> (ii) suffering from a serious functional or cognitive impairment, or
>> (iii) experiencing deteriorating physical or mental health because of the aging process,

>   that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
>   (b)(2) Age of the Defendant.—The defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
>   (d) Rehabilitation of Defenant.—Pursuant to 28 U.S.C. § 994(t), rehabilitation for the defendant is not, by itself, an extraordinary and compelling reasons for purposes of this policy statement.  However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted.

USSG § 1B1.13(b)(1)(B), (b)(2), and (d).

In the present case, Defendant was sentenced to life in prison without the possibility of release. At age sixty-eight (68), Defendant has served at least ten years of his sentence. Defendant asserts that he has rehabilitated himself and has a clean disciplinary record. Defendant suffers from the following medical conditions: cardiac failure, hyperlipidemia, cirrhosis of the liver, internal derangement of the knee, Type II diabetes with neurological manifestation, and hypertension. However, the Court is not convinced that these conditions present a compelling basis for early release. It appears that these conditions are capable of being treated in Defendant's correctional facility, and there is no indication that his ability to provide self-care is diminished. In fact, some of these conditions are treatable with medication that is available to Defendant. Defendant's participation in programming and employment while incarcerated, along with his record of good conduct is commendable, but cannot outweigh the heinous conduct he displayed by abducting, assaulting, and murdering Jane Doe. The Court does not believe that the reasons advanced by Defendant, individually or collectively, amount to extraordinary and compelling circumstances. Even if the Court found that they did, the Court would still have to consider the 18 § 3553(a) factors, which do not favor release or a reduction in sentence.

### C. § 3553(a) Sentencing Factors

In a motion for release pursuant to the FSA, courts must also determine if the sentencing factors under 18 U.S.C. § 3553(a) support an inmate's release. 18 U.S.C. § 3582(c)(1)(A). That statute provides:

> (a) Factors To Be Considered in Imposing a Sentence. — The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
>
> > (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> >
> > (2) the need for the sentence imposed—
> >
> > > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > >
> > > (B) to afford adequate deterrence to criminal conduct;
> > >
> > > (C) to protect the public from further crimes of the defendant; and
> > >
> > > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> >
> > (3) the kinds of sentences available;
> >
> > (4) the kinds of sentence and the sentencing range established for—
> >
> > > (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [issued by the Sentencing Commission];
>
> . . .
>
> > (5) any pertinent policy statement [issued by the Sentencing Commission];
> >
> > (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> >
> > (7) the need to provide restitution to any victims of the offense.
>
> 18 U.S.C. § 3553(a).

Defendant argues that the sentencing factors support his request for release. Defendant notes that he has not received any disciplinary violations and has maintained good conduct while

in prison. He has worked in the UNICOR program for over twenty years and has completed numerous rehabilitative classes and programs. Defendant notes that the Sentencing Commission recognizes that recidivism rates decrease as a person ages. He states that, at age sixty-eight, he has had "ample time to mature, rehabilitate, and be punished" and is "not the same man who committed [murder] approximately 27 years ago." ECF No. 139, p. 6.

The Government asserts that an examination of the sentencing factors precludes releasing Defendant. The Government emphasizes the horrendous nature and circumstances of Defendant's crime against Jane Doe, which justify his life sentence without the possibility of release. Defendant committed the murder of Jane Doe after having already committed sexual abuse of a child and burglary of a habitation with intent to commit a crime. At the time of Jane Doe's murder, he showed no remorse and admitted that he would forget about it in a few days. The Government argues that reducing Defendant's sentence would fail to reflect the seriousness of the offense and fail to provide just punishment. The Court agrees. Accordingly, the Court finds that the sentencing factors do not support Defendant's request for release, and his motion fails on this ground. 18 U.S.C. § 3582(c)(1)(A)(i).

### D. Safety Considerations Under 18 U.S.C. § 3142(g)

The requirement under 18 U.S.C. § 3582(c)(1)(A) that any reduction be consistent with any applicable policy statements issued by the Sentencing Commission necessitates an evaluation of the 18 U.S.C. § 3142(g) safety factors. *See* USSG § 1B1.13(a)(2). The factors for consideration under § 3142(g) are:

> (g) Factors to be considered.—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—
>
> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of

>terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
>(2) the weight of the evidence against the person;
>
>(3) the history and characteristics of the person, including—
>
>>(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>>(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
>(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.  In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

Defendant argues that his release is appropriate in light of the § 3142(g) safety considerations.  Defendant contends that his lack of disciplinary issues and willingness to comply with the rules within prison reveal that he will abide by the law if released from prison.  He notes that he began his sentence in a high security prison but has moved to a medium facility.  Defendant states that if he was released, he would live with his daughter, have social security benefits, obtain health insurance, and be able to take care of his financial needs.

The Government argues that the nature of Defendant's crime cuts deeply against his release.  Defendant is a predator who drove around looking for a woman to abduct, assault, and murder.  He did advanced planning as to how he would successfully commit the horrendous crime

and avoid capture. After the murder, he chillingly stated that it "wasn't hard" and that he "would forget about it in a few days." ECF No. 125, ¶ 19. Defendant committed the instant offense while on parole supervision and after he had already committed two other serious crimes. Defendant's records indicate he has been diagnosed as having antisocial personality disorder and has a history of drug abuse.

The Court finds that Defendant's motion must fail under the § 3142(g) safety considerations for many of the same reasons it failed under the sentencing considerations. Defendant committed a violent crime, abducting a woman while holding a knife to her throat, keeping her a prisoner for several hours, and then executing her with a shotgun blast in a remote area. The Court is not convinced that Defendant's rehabilitative efforts while incarcerated can overcome the danger he poses to the community, especially to women. Accordingly, the Court finds that the § 3142(g) safety considerations preclude the Court from finding that Defendant's release is appropriate at this time and his motion also fails on this ground. 18 U.S.C. § 3582(c)(1)(A).

### III. CONCLUSION

In sum, the Court concludes that the nature and circumstances of Defendant's crime combined with the danger he poses to the community outweigh the reasons he gives for compassionate release. Thus, the Court finds that Defendant's Motion for Compassionate Release and Supplement (ECF Nos. 120 and 139) should be and hereby are **DENIED**.

**IT IS SO ORDERED**, this 3rd day of July, 2024.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge